```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
OTIS A. DANIEL,                                             :
                                         Plaintiff,         :
                                                            :          13 Civ. 4384 (PAE)
              -v-                                           :
                                                            :          OPINION & ORDER
T&M PROTECTION RESOURCES LLC,                               :
                                                            :
                                         Defendant.         :
                                                            :
------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On February 19, 2015, the Court granted defendant T&M Protection Resources, LLC's motion for summary judgment on *pro se* plaintiff Otis Daniel's claims that he had been subjected to a hostile work environment, discriminatory termination, Family Medical Leave Act violations, and common law negligence. Dkt. 106 ("February 19 Opinion"), *reported at Daniel v. T&M Protection Resources LLC*, No. 13 Civ. 4384 (PAE), 2015 WL 728175 (S.D.N.Y. Feb. 19, 2015). The Court assumes familiarity with the underlying facts of this case and with the February 19 Opinion. On February 23, 2015, Daniel filed a motion for reconsideration. Dkt. 111 ("Motion"). On February 24, 2015, Daniel filed a letter clarifying the bases for his motion for reconsideration. Dkt. 113 ("Letter"). For the following reasons, the motion is denied.

The standard governing motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y.

2005); *see also Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple."). Rather, reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). Here, Daniel does not identify a change in controlling law, nor does he allege that new evidence has become available. Accordingly, the Court construes Daniel's motion as seeking reconsideration to prevent manifest injustice.

Daniel's motion includes a numbered list of 17 arguments, which fall into roughly three categories: legal and factual conclusions, criticism of the defendants, and identifications of facts the Court did not address. Daniel's letter presents another 21 arguments, which are similar to the arguments listed in the motion. The Court addresses each category of argument in turn.

First, Daniel asserts various legal and factual conclusions. *See* Motion ¶¶ 2, 5, 10, 12, 13, 14, 16, 17; Letter ¶¶ 1, 13, 17, 21. For instance, Daniel claims that his termination "was motivated by [his] protected class" and by "malice," and that T&M's proffered explanation for his termination "was pretextual." Motion ¶¶ 2, 5, 16, 17. Daniel also claims that T&M received numerous complaints about John Melidones's conduct, Letter ¶ 13, and that witness statements provided by T&M were "fabricated" or "forged," Motion ¶¶ 10, 12, 14, 16. Finally, Daniel argues that he "did nothing wrong" and "did not violate any policies of T&M." Motion ¶ 13; Letter ¶¶ 1, 14, 21. Daniel does not cite any evidence to support these claims. And the Court, having carefully reviewed all of the materials submitted by both parties, has already rejected these claims. In particular, the Court relied on the testimony Daniel gave under oath at his

2

deposition, where he admitted that he had a Smith & Wesson BB gun that looked like a real gun delivered to his workplace, Daniel Dep. 177, 201, and acknowledged that his possession of the BB gun may have violated T&M's firearms policy, *id.* at 168–69, 174–75. As the Court explained at length in its February 19 Opinion, the evidence indicates that Daniel was terminated for this legitimate non-discriminatory reason, not because of his race, national origin, or sex. *See* February 19 Opinion, at 26–38.

Second, Daniel complains about certain conduct by T&M and its counsel. *See* Motion ¶¶ 7, 8; Letter ¶¶ 2, 4, 8, 10, 11, 14, 16. Specifically, Daniel claims that T&M did not respond to his sur-reply and 56.1 statement. Motion ¶ 7. That is simply untrue: T&M, with the Court's permission, filed a response to Daniel's sur-reply on October 23, 2014. Dkt. 97–98. Daniel also claims that T&M's disciplinary committee did not allow him to discuss Melidones's discriminatory and harassing behavior during his disciplinary hearing. Motion ¶ 8; Letter ¶ 4. That fact, although taken as true for the purpose of resolving T&M's motion for summary judgment, does not prove that T&M discriminated against Daniel. Daniel had many other opportunities to report Melidones's conduct, and Melidones did not fire him—the decision to terminate Daniel was made by a five-member disciplinary committee and approved by T&M's CEO. *See* February 19 Opinion, at 30–31 (discussing the disciplinary hearing), 33–34 (discussing Daniel's termination).

In his letter, Daniel also complains about Melidones's conduct and the behavior of T&M management more generally. Letter ¶¶ 2, 8, 10, 11, 14, 16. Daniel explains that Melidones's comments "were severely offensive and hurtful"; that "Melidones repeatedly expressed his utter disgust or disdain of the security staff"; and that Melidones used "vile, profane, [and] insulting language." Letter ¶¶ 2, 8, 10, 11. The Court does not doubt that Melidones's conduct was

3

offensive and hurtful. Under federal employment law, however, it is not enough to prove that Daniel was mistreated or abused while at work. Rather, to state a claim for discrimination, he must establish that he was mistreated because of his membership in a protected class. *See* February 19 Opinion, at 17–18. Daniel's allegations that Melidones treated the entire staff badly—that he abused men and women of all races—certainly provide ample basis to condemn Melidones. Those allegations do not, however, suggest that Melidones singled Daniel out for harassment based on his race, national origin, or sex. Likewise, Daniel complains that T&M "took advantage" of its at-will employment policy and fabricated reasons to fire its employees because the at-will "doctrine gives them the legal right to do it." Letter ¶¶ 14, 16. These arguments may provide an apt critique of at-will employment law, but they do not indicate that T&M did anything unlawful—indeed, Daniel concedes that T&M had the right to terminate him without cause and that his conduct, in fact, provided good cause.

Third, Daniel identifies a range of factual propositions that, he alleges, the Court did not address in its February 19 Opinion. Motion ¶¶ 1, 3, 4, 6, 9 11, 15; Letter ¶¶ 5, 6, 12, 15, 18, 19, 20. Daniel is certainly correct that "[i]n the Court's opinion and order on 2/19/15 many facts were stated and other facts were omitted or were not addressed." Motion ¶ 1. Daniel submitted hundreds of pages of briefing and evidence, as did T&M. *See* February 19 Opinion, at 2 n.1, 8–9 (listing the submissions the court considered in resolving the motion for summary judgment). The Court assures the parties that it thoroughly reviewed every page. In its 44-page Opinion, however, the Court discussed only the facts and arguments most relevant to Daniel's claims. The Court did not, for example, discuss Daniel's allegation that "NYPD officers harass[ed] and intimidate[ed] [him] after [his] employment termination." Motion ¶ 6; Letter ¶ 18. Even assuming the truth of that allegation, which is not supported by evidence in the record,

information about the NYPD's conduct did not help the Court resolve whether T&M discriminated against Daniel, denied him medical leave, or acted negligently. Similarly, the Court did not address Daniel's allegation that "T&M management did not follow or adhere to its own policies." Motion ¶ 15; Letter ¶ 15. That may well be true, and it may suggest that T&M's management is disorganized or unfair, but it does not prove that T&M's management behaved in a discriminatory or otherwise unlawful fashion. The Court also did not address the lack of video evidence in the case. Motion ¶ 4; Letter ¶ 20. Daniel testified under oath that he possessed a BB gun at the worksite. *See* Daniel Dep. 177–78, 183, 197. Video footage to further confirm that fact was not necessary, and T&M was not required to provide it.

Daniel emphatically argues that all packages he received at the worksite were accepted by his co-workers. Motion ¶¶ 3, 9, 11; Letter ¶¶ 5, 6. The Court accepts that fact as true. Daniel's co-workers all so represented in their written statements. However, it is not relevant. As the Court has explained, that Daniel's co-workers knew about his personal package deliveries does not establish that Melidones knew about those deliveries. *See* February 19, 2015 Opinion, at 28 & n.7. Nor does it prove that Daniel was allowed to receive packages at work. Notably, Daniel's co-workers stated that they knew that he was violating T&M policy, *see id.* at 29–30, and apparently declined to report him, perhaps out of friendship or to avoid being a "snitch." Nor does it prove that Daniel was unfairly singled out for punishment. The record does not reflect what, if any, disciplinary actions Daniel's co-workers faced. Even assuming they faced minimal or no repercussions, it is reasonable to punish the employee who received the packages (and later displayed the gun that had been within one of them) more harshly than employees who merely accepted them.

Daniel also argues that "the Court did not address the fact that T&M did not have a policy prohibiting package delivery to the work site" and that "Mr. Melidones during [Daniel's] employment never instructed [him] to stop package delivery." Motion ¶¶ 3, 9; Letter ¶ 19. The Court did, in fact, address these issues. *See* February 19 Opinion, at 28 & n.6 (discussing T&M's policy prohibiting package delivery); *id.* at 26–27 (recounting Daniel's conversation with Melidones about T&M's policy). More important, however, Daniel's arguments miss the broader point: The Court held that Daniel's termination was legitimate and non-discriminatory because it was based on his possession of a realistic-looking Smith & Wesson BB gun at work, which violated T&M's policies regarding unauthorized weapons and possession of firearms. *See id.*, at 36–37. Even if Daniel was allowed to receive personal packages in general—for instance, packages containing books or clothing—he was not allowed to receive a package that contained a prohibited weapon.[1]

Finally, Daniel's letter presents a slew of new allegations that do not appear anywhere in the record and in fact contradict testimony Daniel gave under oath at his deposition. Letter ¶¶ 3, 7, 9, 10, 11. For example, Daniel now claims that he "repeatedly expressed to Mr. Melidones how I felt and asked him to stop." Letter ¶ 3. During his deposition, however, Daniel testified that, apart from one anonymous phone call to a T&M hotline in August 2011, he never complained about Melidones's behavior during his tenure at T&M. *See* Daniel Dep. 119, 261. Similarly, Daniel—for the first time—claims that Melidones "physically threatened members of the staff with bodily harm" and "violently reprimanded staff members." Letter ¶¶ 10, 11. This

---

[1] Similarly, Daniel recounts the incident in which Melidones told Daniel that he was paid too much. Letter ¶ 12. As the Court explained, that comment, although offensive and inappropriate, does not establish a hostile work environment or support an inference that Daniel's termination was discriminatory. *See* February 19 Opinion, at 3, 12, 37 (discussing Melidones's statement); *id.* at 17–25, 33–38 (explaining the Court's decision on Daniel's Title VII claims).

claim is inconsistent with Daniel's statements at his deposition. There, Daniel testified that Melidones never physically threatened him, Daniel Dep. 154, and that the only physical contact consisted of isolated incidents in which Melidones brushed against Daniel's buttocks and slapped him on the shoulder, *id.* at 133, 149, 230. Daniel never mentioned physically threatening or violent conduct directed as his co-workers, and their statements do not support Daniel's allegation that such conduct occurred. Because Daniel does not identify any record evidence that supports his new arguments, the Court cannot consider them.

For the foregoing reasons, Daniel's motion for reconsideration is denied. The Clerk of Court is directed to terminate the motion pending at docket number 111.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: February 24, 2015
       New York, New York