N.Y.S.D. Case #
13-cv-4384(PAE)

15-560-cv
Daniel v. T&M Protection Resources, LLC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 25th day of April, two thousand seventeen.

Present:  ROSEMARY S. POOLER,
          RICHARD C. WESLEY,
          SUSAN L. CARNEY,
                    *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 25, 2017

_____

OTIS A. DANIEL,

       *Plaintiff-Appellant*,

       v.                                                                      15-560-cv

T&M PROTECTION RESOURCES, LLC,

       *Defendant-Appellee*.[1]

_____

Appearing for Appellant:    Otis A. Daniel, *pro se*, New York, NY.

Appearing for Appellee:    Leonard Weintraub, Paduano & Weintraub LLP, New York, NY.

Appearing for *Amicus Curiae*: Gail S. Coleman (P. David Lopez, General Counsel, Jennifer S. Goldstein, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, *on the brief*), U.S. Equal Employment

---

[1] The Clerk of Court is respectfully directed to amend the caption as above.

Opportunity Commission, Washington, D.C., *amicus curiae in support of Plaintiff-Appellant*.

Appeal from the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **VACATED** and **REMANDED**.

Appellant Otis A. Daniel, proceeding pro se, appeals from the district court's grant of summary judgment in favor of T&M Protection Resources, LLC ("T&M") on his hostile work environment claim alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. Daniel asserts that his supervisor discriminated against him because of his race, sex, and national origin. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review orders granting summary judgment de novo after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party, and focus on whether the district court properly concluded that there was no genuine dispute as to any material fact and the moving party was entitled to judgment as a matter of law. *See Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013). "Where summary judgment was granted for the employer, we must take the facts alleged by the employee to be true." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (internal quotation marks, brackets, and ellipses omitted).

To establish a hostile work environment claim, a plaintiff must show "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) (brackets omitted). "Isolated incidents usually will not suffice to establish a hostile work environment, although [this Court has] often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently severe." *Redd*, 678 F.3d at 175-76 (internal quotation marks omitted).

### I. Supervisor's Statement to Daniel, "You Fucking Nigger"

First, we review whether, as proposed by the Equal Employment Opportunity Commission ("EEOC"), the one-time use of the slur "nigger" from a supervisor to a subordinate can, by itself, support a hostile work environment claim. The district court held that it could not, relying on *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

We must disagree with the district court's assessment of *Schwapp*. *Schwapp* states that, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that[,] instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id.* at 110 (internal quotation marks, brackets, and citations omitted). "Thus, whether racial slurs constitute a hostile

work environment typically depends upon the quantity, frequency, and *severity* of those slurs, considered *cumulatively* in order to obtain a realistic view of the work environment." *Id.* at 110-11 (emphasis added) (internal quotation marks and citations omitted). *Schwapp*, therefore, did not foreclose the possibility that the one-time use of a severe racial slur could, by itself, support a hostile work environment claim when evaluated in the cumulative reality of the work environment. The district court's reading of *Schwapp* is further at variance with this Court's more recent observation, in dicta, that "perhaps *no single act* can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (emphasis added) (brackets omitted). Therefore, although we decline to confront the issue of whether the one-time use of the slur "nigger" by a supervisor to a subordinate can, by itself, support a claim for a hostile work environment, we conclude that the district court improperly relied on our precedents when it rejected this possibility as a matter of law.

## II. Sexual Harassment and Discrimination Due to "Perceived Sexual Orientation"

Next, the district court properly construed Daniel's sex-related discrimination claims as sexual harassment claims under *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79-80 (1998), which held that "male-on-male sexual harassment" is prohibited by Title VII when the plaintiff demonstrates that he was harassed because of his sex. Additionally, although we have held Title VII does not currently protect against discrimination based on sexual orientation, *see Zarda v. Altitude Express*, No. 15-3775, slip op. at 7-8 (2d Cir. Apr. 18, 2017), it does offer protection for discrimination because of the plaintiff's failure to conform to gender norms, *see Anonymous v. Omnicom Grp., Inc.*, No. 16-748, 2017 WL 1130183, at *3-*4 (2d Cir. Mar. 27, 2017).

Here, the district court properly construed as sexual harassment the alleged incident when Daniel's supervisor brushed his genitalia against Daniel's buttocks. *See Redd*, 678 F.3d at 177 ("Direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment[.]"). Furthermore, Daniel's claims that his supervisor frequently called him a "homo" and told him to "Man up, be a man," can be properly construed as harassment because of Daniel's failure to conform to gender stereotypes. *See Omnicom Grp., Inc.*, 2017 WL 1130183, at *3-*4. Thus, Daniel's sex discrimination claims were properly considered by the district court.

## III. Failure to Consider Facially Neutral Incidents in Evaluating Claims

The district court erred, however, by failing to include in its analysis some of the complained-of facially neutral incidents of harassment. We have held that a plaintiff may rely upon facially neutral conduct to bolster a harassment claim when "the same individual engaged in multiple acts of harassment, some overtly [based on a protected characteristic] and some not." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547-48 (2d Cir. 2010) (internal quotations marks and citation omitted). First, with respect to Daniel's racial harassment claim, Daniel's supervisor's inquiry as to whether Daniel stole a computer—combined with the supervisor's overtly racist remarks—should not have been ignored by the district court. Because "some evidentiary basis" existed for inferring that this "neutral" incident was animated by hostility because of Daniel's

3

race, it should have been considered as part of Daniel's racial harassment claim. *See id.* at 548-49. Second, with respect to Daniel's sexual harassment claim, the district court failed to consider Daniel's testimony that his supervisor repeatedly watched him nap and change his clothes as evidence of additional incidents of sexual discrimination and harassment. This evidence should have been included in the district court's analysis because of the overt sexual harassment Daniel experienced from his supervisor. *See id.* Instead, the district court improperly credited T&M's argument that the supervisor had a neutral motive for watching Daniel, instead of drawing an inference in Daniel's favor as the district court must on a motion for summary judgment. *See Redd*, 678 F.3d at 174.

### IV. The District Court's Failure to Properly Apply the *Harris v. Forklift* Factors

Finally, the district court erred by determining that, as a matter of law, Daniel failed to allege incidents of harassment sufficient to support a hostile work environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993), provides that courts may determine "whether an environment is hostile or abusive . . . only by looking at all the circumstances" of the work environment, which include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23 (internal quotation marks omitted).

Here, Daniel alleged approximately twenty discrete incidents of harassment during his 15-month employment, and at least two incidents strike this Court as severe (being called a "nigger" by his supervisor, and his supervisor brushing his genitalia against Daniel's buttocks). In addition, the sexual harassment Daniel faced could be perceived as threatening. Finally, although Daniel missed only one day of work because of the harassment he experienced, "no single factor is required" in order for a hostile work environment claim to survive summary judgment. *Id.*

In sum, Daniel presents a persistent pattern of harassment that began as soon as he was hired by T&M and continued until his termination. *See Redd*, 678 F.3d at 174. The evidence that Daniel was harassed on multiple fronts—because of his race, sex, and national origin—should also be considered when evaluating Daniel's work environment as a whole. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 572 (2d Cir. 2000) (recognizing racial harassment can exacerbate the effect of sexual harassment and vice versa). Reviewed in the aggregate, the harassment Daniel allegedly experienced could be found to "alter the conditions of [his] employment and create an abusive work environment" in violation of Title VII. *See Oncale*, 523 U.S. at 78.

Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

4